# Lee, Appellant, v. Marsh.

*School children—Vaccination—Method to be used—Form of certificate —Constitutional law—Act of June 18, 1895, P. L. 203.*

1. The meaning of the term "vaccination" as used in the Act of June 18, 1895, P. L. 203, which prohibits the attendance of a child at school without a certificate of successful vaccination, or of its having had the smallpox, is inoculation with the virus of cowpox for the purpose of communicating that disease as a prophylactic against smallpox, and the test of its success is the appearance of the symptoms of the disease including those which manifest themselves on the skin.

2. Under the act of 1905 the state health department has power to regulate the form of certificate to be used, so as to prevent ambiguity and to require the certifying physician to use words in the same sense with which they are used in the act.

Argued Nov. 2, 1910. Appeal, No. 203, Oct. T., 1910, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1909, No. 956, dismissing bill in equity in case of Harry E. Lee and Dorothy M. Lee by Harry E. Lee, her father and next friend, v. L. A. Marsh, successor to W. E. Borger, principal of the Edgewood public school. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

MILLER, J., specially presiding, found the facts to be as follows:

1. The plaintiff, Harry E. Lee, is a resident of the borough of Edgewood, this county and state, and is a citizen of Pennsylvania; as such he has a prima facie right to have his daughter, Dorothy M. Lee, eight years of age, residing with him, attend the public school of said Edgewood borough school district. The defendant, W. E. Borger, was, when this bill was filed, the duly elected principal of the schools of said district, and his successor is L. A. Marsh, substituted as defendant upon the hearing of the case.

2. On or about September 7, 1908, there was presented by Dorothy M. Lee, who was of proper school age, to the defendant, W. E. Borger, then principal of the Edgewood public schools, the following certificate, exhibit "A," attached to the plaintiff's bill:

"CERTIFICATE OF VACCINATION.

"WILKINSBURG, PA., September 7th, 1908.
"Mr. W. E. Borger,

"Principal of Edgewood School.

"After personal examination of Dorothy M. Lee, age 7 years, residence No. 124 Elm St., . . . . . . . . Ward, I hereby certify that she has been successfully vaccinated.

"W. R. STEPHENS, M. D.

"Office No. 814 Wood St."

Certificates in the foregoing form had been previously accepted by said defendant.

3. The defendant, Borger, having received notice from, or through the department of health, by the commissioner of health and his advisory board, that certificates of vaccination must be in the form prescribed by him, which certificates or forms were then in his possession, and which had been prescribed for use since September 15, 1905, refused to accept the foregoing certificate marked exhibit "A" from Dorothy M. Lee, gave her one of the forms so prescribed by the department of health, to be duly filled out, said form being as follows, exhibit No. 9:

"Form 10.

"I hereby certify that on the........day of........, 190.., I vaccinated........Age........Address........ and that on the........day of........, 190.., I find a resulting sore, which in my opinion means a successful vaccination.

               "........M. D.

               "Address........

"All certificates bearing date after Sept. 15, 1905, must be in above form."

Whereupon said certificate or form on the following morning was returned by Dorothy Lee, exhibit No. 1, filled out as follows:

"Form 10.

"I hereby certify that on the 7th day of Sept., 1908, I vaccinated Dorothy Martin Lee, Age 8, Address 124 Elm St., and that on the........day of........, 190.., I find a result which in my opinion means a successful vaccination.

               "W. R. STEPHENS, M. D.,

               "Address 814 Wood St.

"All certificates bearing date after Sept. 15, 1905, must be in above form."

In addition to the omission of the date in the foregoing certificate, the original blank is changed by striking out the syllable "ing" in the word "resulting," and also striking out the word "sore."

It also appears that the date of the vaccination was the day preceding the date of presentation of the certificate.

4. By the advice of the school board of said district, the foregoing certificate, exhibit No. 1, with like certificates presented at the time were, by the defendant, sent to the state commissioner of health, Dr. Samuel G. Dixon, who, under date of October 5, 1908, returned said certificate and replied as follows, exhibit No. 3:

"Samuel G. Dixon, M. D.

"Commonwealth of Pennsylvania

"Department of Health

"Harrisburg.

"October 5, 1908.

"Prof. W. E. Borger,

"Edgewood Park, Pa.

"My Dear Sir:—

"Your favor of recent date is at hand and contents carefully noted.

"In reply I beg to advise you that the Act of June 18, 1895, Section 12, is specific in requiring a certificate of successful vaccination, which result follows the application of vaccine virus to a cutaneous surface with a resulting sore and scar formation, the latter constituting conclusive evidence of a successful result.

"In view of the specific requirements of the Act, bogus certificates such as the inclosed should not be accepted.

"Very truly yours,

"Samuel G. Dixon."

5. The theory and method of vaccination as applicable to school children, prescribed by the department of health, through the said commissioner of health and his advisory board, was determined upon and is set forth in official circular No. 14, exhibit No. 10, the same being duly pro-

mulgated to all as required by the statute hereinafter referred to, and being made a part of this finding; said rules and regulations as described in said circular, after setting forth data with respect to smallpox upon persons vaccinated and not vaccinated, provides as follows:

"The part should be prepared (preferably the left arm if the person is right handed) by thorough washing with soap and water, rubbing sufficiently to produce a slight surface redness—after which the part should be rinsed with boiling water and then by alcohol.

"If the subject be a male, scarify over the insertion of the deltoid; if a girl, higher up near the shoulder or on the leg if desired.

"The lymph should be forced out of the tube upon the disinfected skin by means of a rubber bulb. It should never be blown out of the tube.

"Grasp the arm with the hand, rendering the skin tense over the site of operation and with a scalpel or needle that has been sterilized in a flame, gently scrape and scarify the area covered by the drop of lymph until the true skin is bared.

"A space of an eighth of an inch in diameter should be scarified. Always endeavor to avoid bringing blood.

"After allowing the area to dry, a clean, soft handkerchief or a soft cotton cloth (recently sterilized by boiling), is fastened to the shoulder of the under garment in such a manner that it will hang down over the wound, thus preventing irritation from rubbing of the clothes. No other dressing is necessary.

"The following well-known succession of events appearing ordinarily after a successful inoculation should be explained fully to patients or their family, who should be instructed to consult a physician in the event of untoward symptoms.

"Within three to five days, according to the activity of the virus, vesicles appear at the edges of the scarification and an area of redness appears around it, which is attended by considerable itching. Patients should be especially

cautioned never to scratch it or permit dirt of any kind to get into the wound.

"About this time the glands under the arm may become slightly swollen and tender, and there may be slight fever and loss of appetite. About the tenth day the sore begins to dry with the formation of a scab a few days later.

"They should be instructed to observe care not to injure the scab, but allow it to dry up and fall off spontaneously, after which it should be burned.

"Upon the appearance of the typical vesicle and resulting sore a certificate of successful vaccination should be issued and never before."

In connection with the foregoing official circular the foregoing blank certificates of vaccination, exhibit No. 1, had been prescribed by the department of health, and were at the time of the beginning of this action in the possession of the defendant, and presumably of all other persons interested.

6. The vaccination of Dorothy M. Lee by the physician, who signed the foregoing certificates, was "by the giving of vaccine virus (triturated virus) through the alimentary canal, through the mouth . . . . in a powder form."

The foregoing is a method of vaccination recognized by the International School of Homœpathy.

7. As a fact of which judicial notice is taken, since the discovery of vaccination by Dr. Jenner, the method as generally recognized by a great majority of definitions, descriptions and medical authorities of all the dominating schools of medicine, is by applying the virus to a scarified portion of the body.

On the facts as found MILLER, J., dismissed the bill.

On exceptions to the findings of fact and conclusions of law, SHAFER, J., filed the following opinion:

Without undertaking to discuss in detail the exceptions to the findings of fact and conclusions of law, we are of opinion that the whole case really turns upon what is the

meaning of the term "vaccination" as used in the act of 1895, which prohibits the attendance of a child at school without a certificate of successful vaccination, or of its having had the smallpox. The ordinary and usual meaning of "vaccination," and the sense in which it must be supposed to have been used by the legislature, is inoculation with the virus of cowpox for the purpose of communicating that disease as a prophylactic against smallpox. It indicates an operation, and not a result. If a person should take cowpox by milking cows, or otherwise, or from other contact with the disease he could not be said to have been vaccinated. The operation is comparatively old, having been in use for over 100 years, and during that time has always consisted of inoculating the body, that is, grafting upon it the disease, by inserting the virus under the skin, and the test of its success has always been considered to be the appearance of the symptoms of the disease including those which manifest themselves on the skin.

It appears in this case that for some years past another method of guarding against smallpox has come into use more or less extensively, which, as we understand it, consist in attenuating to a high degree the virus of smallpox, or of cowpox, the attenuation of the virus of smallpox being called variolinum, and that of cowpox, vaccininum, and administering one or the other of these substances by the mouth, and it is claimed that in this way there are produced in the body practically the same symptoms as are produced by vaccination except the exterior and local inflammation, and that either of these methods has the same preventive virtue as ordinary vaccination. From what is known of the use of toxins of other diseases this would seem to be possibly true, but whatever it may be, and whatever the result may be, it is not vaccination as the term is used in the act.

The term "vaccination," however, appears to be used by some physicians at least, as general term for the introduction into the body, by any method, of any kind of virus

as a preventive of disease, and it is plain that in this case the physician who certified to the successful vaccination of the plaintiff used the term in this general sense and not in the sense of the act. In order, therefore, to guard against such ambiguous use of the term by which the act would be evaded, the health department, under the terms of the act of 1905, prescribed a form of certificate which would prevent such ambiguity, and the requiring of that form is really what is complained of in this case. It was strenuously argued that the authority given by the act of 1905 to the health department to fix forms of certificates is a delegation of legislative power and if it is claimed to authorize that board to require safeguards against disease which the act does not substantially require, it would be open to that objection. But all we understand the act of 1905 authorizes, and all that the department has done in this case, is to regulate the form of the certificate so as to prevent ambiguity, and to require the certifying physician to use words in the same sense with which they are used in the act.

For these reasons we are of opinion that the certificate required by the board of health was lawfully required by them, and that its use is obligatory.

The exceptions are, therefore, dismissed.

And now, to wit, September 10, 1910, this cause came on to be heard, having been argued by counsel upon bill, answer, replication and testimony, the court having filed its findings of fact and conclusions of law, and having passed upon the exceptions thereto filed by the plaintiffs and upon consideration thereof, it is now ordered, adjudged and decreed that the injunction heretofore granted be dissolved and the bill of complaint filed in this case be dismissed at the cost of the plaintiffs.

*Error assigned* was decree dismissing the bill.

*James T. Buchanan,* with him *Hermann L. Grote* and *Frederick C. Grote,* for appellant.—The duty of enforcing

the provisions of the act is specifically imposed upon, and rests solely with, the principals and other persons in immediate or active charge of the schools; school directors, or health authorities of the district or municipalities are not such other persons: Com. v. Rowe, 218 Pa. 168; Cousins v. School District, 28 Pa. C. C. Rep. 381.

*John D. Meyer*, for appellee, cited: Isenhour v. State, 157 Ind. 517 (62 N. E. Repr. 40); Blue v. Beach, 155 Ind. 121 (56 N. E. Repr. 89); Jacobson v. Massachusetts, 197 U. S. 11 (25 Sup. Ct. Repr. 358).

PER CURIAM, January 3, 1911:

The decree in this case is affirmed at appellants' costs on the opinion of the court below dismissing the exceptions to the findings of fact and conclusions of law of the judge specially presiding.