SEUBOLD v. FORT SMITH SPECIAL SCHOOL DISTRICT.

4-9443                                          237 S. W. 2d 884

Opinion delivered March 26, 1951.

*Franklin Wilder,* for appellant.

*Daily & Woods,* for appellee.

ED. F. McFADDIN, Justice. The appellants are attacking the requirement, that school children be vaccinated against smallpox.

Mr. and Mrs. Frank Seubold, residents of Fort Smith, have three children, Ruth, Frank, and T. K., who are 13, 10 and 8 years of age respectively. The parents, for themselves and the minors, filed suit in the Chancery Court against the Fort Smith School District and its School Superintendent, alleging, *inter alia*:

"That the said Ruth Ann Seubold, Frank N. Seubold, and T. K. Seubold are all of good moral habits, are free from infectious disease, and are not suffering from any disability whatsoever. That they have applied to the defendants for admission to the proper schools within the jurisdiction of the defendant, . . . but that the said defendants have refused, and now continue to refuse, to admit them. That the said defendants, in refusing to admit them, are acting for and in behalf of the State of

Arkansas, or under color or pretense of its laws, and are thereby denying to the plaintiffs the equal protection of the laws, contrary to Amendment Fourteen to the Consti tution of the United States. . . . That the said de fendants unlawfully and without warrant of law, are enforcing, as a condition precedent to admission to the schools, the following administrative rule or regulation:

" 'Section 4. *Smallpox Vaccination.*

" '(a) No person shall be entered as a teacher, en ployee or pupil in a public or private school in this Stat without having first presented to the principal in charge or the proper authorities, a certificate from a licensed and competent physician of this State certifying that the said teacher, employee or pupil has been successfully vaccinated; or in lieu of a certificate of successful vacci- nation, a certificate certifying a recent vaccination done in a proper manner by a competent physician; or a cer- tificate showing immunity from having had smallpox.'

"Plaintiffs state that the said defendants, and each of them, should be restrained and enjoined from enforc- ing said rule, or regulation set out above for the reason that said rule or regulation is unlawful and void, for the following reasons:

"Said rule or regulation is so arbitrary, capricious and unreasonable that its enforcement against the said plaintiffs would amount to a deprivation of their liberty and property without due process of law, contrary to Amendment Fourteen to the Constitution of the United States. Said rule or regulation is arbitrary, capricious and unreasonable, because, first, there is no emergency existing to justify compulsory inoculation against small- pox; second, inoculation with smallpox vaccine is not only unnecessary, but is positively dangerous to the health and safety of the plaintiffs, in that it lowers nat- ural resistance to infectious diseases, and in that the vaccine itself is dangerous and constitutes an undue risk to the health and safety of the plaintiffs."

The prayer of the complaint was that the defendants be enjoined from requiring the Seubold children to be

vaccinated. The trial court sustained the defendants' demurrer and dismissed the complaint; and the plaintiffs have appealed. We will refer to the parties as they were styled in the trial court.

Preliminary to a decision of the case at bar, we call attention to some of our earlier cases upholding the requirement of smallpox vaccination. In *State* v. *Martin*, 134 Ark. 420, 204 S. W. 622, we upheld the power of the State Board of Health to make rules requiring the compulsory vaccination of school children, and we sustained conviction of a party who refused to have children vaccinated. In *Allen* v. *Ingalls*, 182 Ark. 991, 33 S. W. 2d 1099, there was a challenge of the validity of the rule of the State Board of Health requiring the vaccination of school children; and we held: that Act 96 of the General Assembly of 1913[1] authorized the State Board of Health to adopt and promulgate rules designed to promote public health; that the rule of the State Board of Health requiring vaccination of school children was valid; and that the School Board did not abuse its discretion in requiring children to be successfully vaccinated against smallpox. With these cases in mind, we come to the matters to be decided in the present litigation.

I. *The Fort Smith School Authorities Were Enforcing a Valid Regulation.* We take judicial notice of the rules of the State Board of Health. (See *State* v. *Martin*, *supra*, and cases there cited.) Such rules, in addition to § 4 (a) as copied in the complaint, further provide:

" (b) The responsibility for the enforcement of this regulation rests equally on each and every member of the school board, the superintendent, principal, or teacher in charge, and the parent or guardian of the pupil, and each of them shall be separately and individually liable for permitting any violation of this regulation. If, in the discretion of the health authority having jurisdiction, any person to whom this regulation applies shall have physical disability which may contraindicate vaccination, a certificate to that effect, issued by the said health officer, stating the contraindication, may be accepted in lieu of a

---

[1] Act 96 of 1913 is now § 82-110, *et seq.*, Ark. Stats.

certificate of vaccination, provided that the exemption shall not apply when such disability shall have been removed.

"(c) The school boards, school superintendents, school teachers, parents and guardians shall be equally responsible for the enforcement of the compulsory vaccination law. They shall furnish such information to the health authorities from time to time as may be required."

Plaintiffs admit, that in *State* v. *Martin* (*supra*) and in *Allen* v. *Ingalls* (*supra*)· we upheld the regulations of the State Board of Health requiring smallpox vaccination, but they seek to avoid those causes by the claims: (a) that those cases were decided prior to 1931; (b) that the Arkansas General Assembly of 1931 adopted Act 169, commonly known as the "School Law," which gave the State Board of Education control of all school matters; and (c) that said Act 169 impliedly repealed the authority of the State Board of Health to make regulations requiring vaccination of school children.

We find no merit in plaintiffs' argument. The Act 169 of 1931 was an Act to codify the school laws of Arkansas. Its caption is "An Act to Provide for the Organization and Administration of the Public Common Schools." It was not the purpose of the Act 169 to inter·fere with health matters; and the Act 169 did not in any manner repeal Act 96 of 1913 which gave the State Board of Health authority to make and enforce regulations for public health. The Act 169 contains no express repeal of the powers theretofore exercised by the State Board of Health and sustained in *State* v. *Martin* (*supra*), and *Allen* v. *Ingalls* (*supra*). Neither does the Act 169 impliedly repeal the powers of the State Board of Health regarding the requirement of vaccination for school children.

What has just been said makes it unnecessary to discuss, whether the Fort Smith School Board, under the authority of such cases as *Isgrig* v. *Srygley*, 210 Ark. 580, 197 S. W. 2d 39, could have adopted the rule requiring vaccination even in the absence of any rule of the State Board of Health.

SCHOOL DISTRICT.

II. *The Complaint Alleged That the Seubold Children Were Normal Children.* As previously copied, the complaint said "That the said Ruth Ann Seubold, Frank N. Seubold, and T. K. Seubold are all of good moral habits, are free from infectious disease, *and are not suffering from any disability whatsoever."* (Italics our own.) The rule of the State Board of Health, as previously copied, provides that if ". . . any person to whom this regulation applies shall have physical disability which may contraindicate[2] vaccination," . . . then vaccination may be omitted . . . "provided that the exemption shall not apply when such disability shall have been removed." Since the complaint alleged that the Seubold children were normal children and did not claim any exemption under the said rule of the State Board of Health, therefore there was no reason for the Fort Smith School Board to treat the Seubold children differently than other children.

III. *The Plaintiffs' Allegation—That the Rule Requiring Vaccination Is "Arbitrary, Capricious and Unreasonable"—Was Only a Legal Conclusion.* The complaint alleged that the rule requiring vaccination "is arbitrary, capricious and unreasonable"; and plaintiffs argue that the effect of the demurrer was to admit such allegations to be true. The law is well settled, that a demurrer admits only facts well pleaded and does not admit conclusions of law. See *Herndon* v. *Gregory,* 190 Ark. 702, 81 S. W. 2d 849, 82 S. W. 2d 244; *Hudson* v. *Simonson,* 170 Ark. 243, 279 S. W. 780; *State* v. *Stevenson,* 2 Ark. 260, 1 c., page 278; and see, also, 49 C. J. 438 and 41 Am. Jur. 463. A few cases will serve to illustrate the application of the foregoing recognized rule:

(a) In *Main* v. *Drainage Dist.,* 204 Ark. 506, 162 S. W. 2d 901, we said:

"It was further alleged that the collection of the delinquent assessments is barred by the statute of limitations, and that proper notice was not given of the suit to collect them to confer jurisdiction upon the court to

---

[2] The word, "contraindicate," in medical parlance is defined by Webster's Dictionary to mean: "To indicate treatment contrary to that which the general tenor of the case would seem to require."

render the foreclosure decree. It is insisted that the demurrer to the intervention, which the court sustained, admits the truth of these allegations, and that the decree should, therefore, be reversed. But not so. We have many times held that a demurrer admits only facts which are well pleaded, and that legal conclusions are not admitted by a demurrer. A recent case to that effect, which cites others to the same effect, is that of *Wilburn* v. *Moon*, 202 Ark. 899, 154 S. W. 2d 7.''

(b) In *Texarkana School Dist.* v. *Ritchie*, 183 Ark. 881, 39 S. W. 2d 289, the complaint alleged that the County Judge ''pretending to be sitting as a court, made a void order.'' We said of that allegation:

''. . . This is but a legal conclusion not admitted to be true by the demurrer, which does not admit that the county judge made the order on a day or at a time when the court was not in session. A demurrer admits only those facts, which are well pleaded; . . .''

(c) In *Pierce Oil Corp.* v. *City of Hope, Arkansas,* 248 U. S. 498, 63 L. Ed. 381, 39 Sup. Ct. 172, there was an allegation that an ordinance of the City was ''unnecessary and unreasonable,'' and a demurrer was sustained to such allegation. Mr. Justice Holmes said:

''. . . The averment that the ordinance is unnecessary and unreasonable, if it be regarded as a conclusion of law upon the point which this court must decide, is not admitted by the demurrer. If it be taken to allege that facts exist that lead to that conclusion, it stands no better. For if there are material facts of which the court would not inform itself, . . . an averment in this general form is not enough. . . . Only facts well pleaded are confessed.''

These cases suffice to show that plaintiffs' allegation about the vaccination rule being ''arbitrary, capricious and unreasonable'' was a mere conclusion which the demurrer did not admit to be a fact. While we need not go into the merits of the requirement for smallpox vaccination, nevertheless, we do point out that the cases from other jurisdictions are in accord with the holdings of our Court: see the Annotation, ''Power of municipal

or school authorities to prescribe vaccination or other health measure as a condition of school attendance," as contained in 93 A. L. R. 1413, *et seq.* The plaintiffs insist that they should have a right to present—in some forum —their contention regarding vaccination being unreasonable and dangerous to health; and they claim that they were entitled to make such presentation in this case. We hold that the plaintiffs have misconceived the situation. We held in *State* v. *Martin* (*supra*) that the State Board. of Health had authority to make the specific regulation here complained of. If the plaintiffs had thought that recent discoveries showed vaccination to be dangerous, then they could have presented such matters to the State Board of Health which has the power to make all necessary and reasonable health rules and regulations.

IV. *The Plaintiffs' Rights Under the United States Constitution Are Not Invaded by the Vaccination Rule Here Involved.* In *Jacobson* v. *Massachusetts,* 197 U. S. 11, 49 L. Ed. 643, 25 Sup. Ct. 358, the Supreme Court of the United States considered the matter of compulsory vaccination as infringing on rights claimed under the United States Constitution, and held that a State law requiring compulsory vaccination did not deprive a citizen of liberty guaranteed by the United States Constitution. More recently, in the case of *Zucht* v. *King,* 260 U. S. 174, 67 L. Ed. 194, 43 Sup. Ct. 24, the United States Supreme Court again considered the matter of compulsory vaccination; and Mr. Justice BRANDEIS, speaking for the Court, said:

". . . Long before this suit was instituted, *Jacobson* v. *Massachusetts,* 197 U. S. 11, 49 L. Ed. 643, 25 Sup. Ct. Rep. 358, 3 Ann. Cas. 765, had settled that it is within the police power of a state to provide for compulsory vaccination."

· In view of these cases, we consider the Federal question to be definitely settled in favor of the validity of the requirement of compulsory vaccination.

The decree of the Chancery Court is in all things affirmed.

HOLT, J., not participating.